ANNIE BENJAMIN *vs.* HOLYOKE STREET RAILWAY COMPANY.

Hampden.    September 28, 1893. — October 20, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Personal Injuries — Street Railway — Due Care — Negligence — Declaration — Evidence.*

In an action against a street railway corporation for personal injuries occasioned to a woman while driving a horse attached to a carriage, in consequence of the horse becoming frightened by the ringing of the gong on an electric car, shying, and causing her to be thrown from the carriage, the question whether she was wanting in due care, because the horse was an improper one for her to undertake to manage, and because she failed, before entering upon the way, to look to see if a car was coming, is for the jury.

If a horse attached to a carriage becomes frightened at the approach of an electric street car, and the driver, who was about to cross the railway track, turns the horse so as to go along on the street by the side of the track, and the motorman, aware of the horse's fright, does not stop the car nor slacken its speed, but, sounding the gong on the car, overtakes the horse, and, when just alongside, sounds the gong again, causing the horse to shy and the driver to be thrown from the carriage and injured, the question of the defendant's negligence, in an action against the railway corporation for such injury, is rightly submitted to the jury.

In an action against a street railway corporation for personal injuries occasioned to the plaintiff in consequence of a horse which she was driving becoming frightened by the ringing of the gong on an electric car, a general averment in the declaration of negligence in the running of the car is sufficient to include an injudicious sounding of the gong, without setting it forth specially as an element of negligence.

At the trial of an action against a street railway corporation for personal injuries occasioned to a woman while driving a horse attached to a carriage, by reason of the horse becoming frightened by the ringing of the gong on an electric car, shying, and causing her to be thrown from the carriage, her evidence tended to show that she struck the ground upon her stomach; and she contended that a miscarriage which she suffered ten or twelve days after the accident, having been confined to her bed during that time, and also subsequent uterine trouble, were the result of the accident. A physician was allowed to be asked by the plaintiff whether the accident was an adequate cause for the miscarriage, after the lapse of a confinement in bed for ten or twelve days; whether, and in what way, it would be possible for such an accident to cause the fœtus to be killed; whether the body of the fœtus would be decomposed necessarily; and whether the presence of flesh on the woman was conclusive evidence of uterine trouble. *Held*, that the defendant had no ground of exception.

TORT, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendant, in consequence of which she

was thrown from a carriage in which she was riding. At the trial in the Superior Court, before *Maynard*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*W. H. Brooks*, for the defendant.

*A. L. Green*, for the plaintiff.

ALLEN, J. The case which the plaintiff's evidence tended to support was as follows. Appleton and Beech Streets crossed each other at right angles. There was an electric street railway on Appleton Street. The plaintiff was driving on Beech Street towards Appleton Street, saw a car pass, thought it would be safe to cross, and drove on to Appleton Street as if to cross it, the roadbed being thirty-four feet wide. As she got almost upon the railway track another car was coming, her horse became frightened, she turned him so as to go along on Appleton Street by the side of the track, the car came following on, the motorman was sounding the gong, and when the car overtook her and was just alongside the gong was sounded again, the horse sprang to the side of the street, and the accident occurred. The view from Beech Street of that part of Appleton Street on which the car was coming was obscured by an orchard and a barn.

The defendant contends that there was no evidence of the plaintiff's due care. The first particular assigned is that the horse which she was driving was manifestly an improper one for her to undertake to manage. This however was for the jury, on all the evidence. The next particular assigned is that she failed to look to see if a car was coming; and a special instruction was asked, based on the assumption that she failed to look. This also was for the jury. The accident did not occur from a collision at the street crossing. The plaintiff had passed that point, and was proceeding on Appleton Street. The court rightly refused to instruct the jury that a mere failure to look would prevent her from recovering. This has been so held even in cases of collision. *Shapleigh* v. *Wyman*, 134 Mass. 118. *French* v. *Taunton Branch Railroad*, 116 Mass. 537. The question was left to the jury, with proper instructions.

The defendant further contends that there was no evidence of its own negligence. But the jury might well find negligence on the defendant's part from the testimony tending to show that the

car was not stopped nor its speed slackened, and that the gong was sounded while the plaintiff was in obvious difficulty from the fright of her horse.   The defendant contends that it was not bound to stop its car or to stop the noise of the gong.   But the omission to do so, under the circumstances, might well be deemed to show carelessness.   The use of the street for electric cars and by the general public was concurrent; and the defendant was bound in using the street to have reference to its reasonable use by others.   *Commonwealth* v. *Temple*, 14 Gray, 69.   *Driscoll* v. *West End Street Railway*, 159 Mass. 142.

It was not necessary specially to set forth in the declaration the injudicious sounding of the gong, as an element of negligence.   Sounding the gong is an incident to the running of the car, and the general averment of negligence in the running of the car was sufficient to include it.   *Eaton* v. *Fitchburg Railroad*, 129 Mass. 364.

The objections to the questions put to the doctor are not sufficiently serious to require discussion.   There was no error in allowing them to be put.*                              *Exceptions overruled.*

---

* The plaintiff introduced evidence tending to show that she struck the ground upon her stomach; and she contended that a miscarriage which she suffered ten or twelve days after the accident, having been confined to her bed during that time, and also subsequent uterine trouble, were the result of the accident.

A physician was allowed to answer the following questions, put by the plaintiff, against the defendant's objection and exception:

*Q.* "If a woman was with child and met with an accident so that she was thrown over the footboard of a wagon by a runaway horse, thrown to the ground on her stomach or side, went home and soon after went to bed, and if she was confined to the bed for ten or twelve days, and if at the end of that time she suffered a miscarriage, would the facts if true be an adequate cause for a miscarriage?"   *A.* "It would be considered an adequate cause for the miscarriage."

*Q.* "If a woman was with child and was thrown over the dashboard by a runaway horse, and struck upon her stomach or her side, that is, thrown over upon the ground, would it be possible for the fœtus to be killed?"   *A.* "It would be possible."

*Q.* "In what way?"   *A.* "It might be killed by direct violence of the blow, or by a separation of the placenta from the womb.   The placenta is what carries the blood from the inside of the womb, from the mother's body to the child's body.   In a sudden jar, that might be separated, so that the fœtus would derive no more blood from the mother.   It might possibly be

---

such an injury to the womb itself as to produce a miscarriage from that injury."

*Q.* "If the child was killed by this fall of the mother we have described, from a team to the ground, and a miscarriage took place ten or twelve days after, would the body of the fœtus be decomposed necessarily?" *A.* "No, not necessarily."

*Q.* "Is the presence of flesh on the woman conclusive evidence whether she has uterine trouble or not?" *A.* "It is not. A great many women increase in flesh when they have uterine trouble, as the result of certain uterine troubles."