FRANK W. REYNOLDS & another, trustees, *vs.* BOSTON RUBBER COMPANY.

Suffolk.   November 21, 22, 1893. — November 29, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Writ of Entry — Deed — Boundary — Evidence.*

The original owner of land afterwards owned in two separate parcels by A. and B. conveyed, in 1792, to B.'s predecessor in title a " tract of marsh land " bounded "northwardly on said C. upland, a ditch dividing said marsh from said upland "; and in 1803 he conveyed to A.'s predecessor in title " a certain piece of upland " bounded " southerly on marsh land, . . . a ditch dividing said upland from said marsh land." The ditch in fact did not exactly follow the line of demarcation between the marsh and upland, which line was curved inward towards the upland somewhat in the form of a bow, but it was a straight cut across, like the string of the bow, so that some marsh land was between the ditch and such line of demarcation. At the trial of a writ of entry by A. against B. to recover this piece of marsh land, several witnesses who were familiar with the locus were allowed to testify that the line of the ditch was straight; and that the ditch was apparently the dividing line between the respective lands of A. and B. *Held,* that the evidence was properly admitted ; and that if upon the deeds themselves the true boundary line was doubtful, the evidence warranted a finding that such boundary was the ditch.

WRIT OF ENTRY, to recover a parcel of land in Chelsea. Plea, *nul disseisin.* Trial in the Superior Court, without a jury, before *Blodgett,* J., who allowed a bill of exceptions, in substance as follows.

The northerly boundary of the demanded premises, described in the writ as formed by a ditch dug by one Tucker, followed the line of natural demarcation between upland and marsh land, and in general was in the form of a bow, of which the ditch formed the cord. The following facts were agreed upon by the parties.

The demandants were, at the time of the bringing of this action the duly appointed trustees under the will of Margaret D. Carter, late of Chelsea, and under the provisions of the will they were duly authorized to purchase, manage, and sell real estate at their discretion.

The testatrix, about February, 1880, purchased from Orrin P. Roberts and others a certain parcel of real estate in Chelsea, containing eight acres more or less, bounded and described as follows: "northerly on the highway; westerly on land now or late of one Whittemore; southerly on marsh land now or late of Dr. Samuel Danforth, and easterly on land now or formerly of said Danforth, a ditch dividing said upland from said marsh."

The premises were formerly owned by one Benjamin Blaney, who conveyed them to Joseph and William Heard by deed dated December 27, 1803, duly recorded, in which they were described as follows: "A certain piece of upland situated in Chelsea in said county of Suffolk, containing seven acres more or less, and bounded as follows, viz.: northerly on the highway, westerly on Whittemore land, southerly on marsh land of Dr. Samuel Danforth, and easterly on land of said Danforth, a ditch dividing said upland from said marsh land, or however otherwise bounded." By mesne conveyances the record title to the premises passed to the demandants, and was held by them when this action was brought.

The tenant was, at the time of the bringing of this action, the owner and holder of a parcel of land adjoining the tract above described, said parcel having been derived by mesne conveyances under a certain deed from Benjamin Blaney to Samuel Danforth, dated February 28, 1792, in which a larger tract, including the land of the tenant, was thus described: "Tract of marsh land lying in Chelsea in the county of Suffolk within the dyke, containing five acres, be the same more or less, and bounded as follows, viz.: easterly on a piece of marsh belonging

to Doctor Aaron Dexter, southwardly on the creek, westwardly on the county line, northwardly on said Blaney upland, a ditch dividing said marsh from said upland."

Upon two plans of lands of the Winnisimmet Company of Chelsea, under whom as grantors the tenant claims its title, dated in 1846, duly recorded, the southern boundary of the demandants' land was delineated as a curved line bending northerly from a certain ditch then existing, and following the line of demarcation between upland and marsh.

The tenant contended that the curved line, as shown upon the above named plans, was the true boundary line between the premises of the demandants and its own.

The demandants contended that, by the deeds of Blaney to Joseph and William Heard, and to Danforth, respectively, the line of the ditch was made the true boundary line between the parcels now owned by the parties to this action, and that by the record title and by prescriptive right the demandants were entitled to the full use and occupation of the premises described in the deed to them from Roberts and others.

Frank W. Reynolds testified, for the demandants, that he was one of the demandants ; that they came into possession of the tract of land first above mentioned some time in 1880 ; that there was no fence between the demandants' land and the land of the tenant, but there was a ditch there ; that the line of the ditch was a straight line ; that there was nothing else beside the ditch apparently separating the demandants' land from the land of the tenant ; and that there was no line of fence in the ditch, and the demandants had never cleaned out the ditch, nor done anything to it whatever.

Lucy H. Fenno testified, for the demandants, that she was a daughter of Joseph Heard, the former owner of the demandants' land ; that she was seventy-nine years old, and had known the land now owned by the demandants since she was a child, and lived on the land with her father from the time she was a child until she married, which was about fifty years before the time of the trial ; that, as far as she could remember, the boundary line of her father's place on the south side towards the marsh was a long straight ditch ; that he had cut the hay upon the tract of land in dispute in this case, but had never made any

other use of it ; that he used to keep the ditch clean ; that she should think the ditch was about six feet wide, but could not tell its depth ; and that the ditch was always full of water.

Joseph R. Carr testified, for the demandants, that he was a civil engineer; that he used to be city surveyor for the city of Chelsea; that he had known the land owned by the demandants since 1870, when he had made a survey of the premises for an heir of the property; that there was nothing to divide the land now of the demandants' from that now of the tenant except a ditch, which ran substantially in a straight line; and that the ditch was about six or eight feet in width, and a foot and a half to two feet deep. On cross-examination, the witness testified that, if one were to go there and look at the land, he could not learn as a fact, simply from observation, what was the boundary line between the two estates.

Lucy E. Barrett testified, for the demandants, that she was a daughter of the witness Fenno; that she had known the land of the demandants ever since she could remember; that she had not lived there since 1867; that at the time she lived there there was no fence between the land now of the demandants and that now of the tenant, but there was a ditch which ran in a straight line; and that she had known of no change in the surface of the land.

The tenant excepted to the admission of all the above evidence for the demandants.

Albert D. Bosson, a witness for the tenant, testified that he was an attorney at law; that he lived upon a portion of the land formerly of the demandants, and a part of the estate originally taken by them in the deeds before mentioned ; that the upland was inclined at a steep grade ; that the marsh land was only " dikey marsh " ; that the straight ditch spoken of was four or five feet wide, and at the ends practically filled up, and contained very little water ; that he last examined it two days before the trial, and went to the land for the purpose of making such examination ; that he had lived in the immediate vicinity of the land for twenty-five or thirty years, and never saw a fence, or anything that resembled it, in the straight ditch ; that along the line of the upland there was a slight elevation or ridge, made up of earth and fragments of stone ; that when the tenant first

purchased the land there was a fence between the upland and lowland, made up of posts about fifteen feet apart and four lines of wire ; and that the tenant had dug a ditch just inside the upland, along the elevation which existed there.

Howard H. Tucker, a witness for the tenant, testified that he was an excavator and drain layer ; that he dug the new trench referred to for the tenant ; that he found the land there to be marsh land and upland ; that he was instructed by the tenant to dig a trench around the edge of the marsh between the marsh and the high land ; that between the upland and the marsh there was a small post and wire fence, and a small ridge, four or five feet wide ; that upon the day before the trial he went to the land and dug down to see what the ridge was composed of, and found it made up of small stones and loam ; that the ridge was six inches to a foot high on the upland side, and eighteen inches on the marsh side, and covered with grass ; that he should judge, by the appearance of the dirt and stones, that it had been hauled there ; and that the same ridge was there when he first dug the trench along the line of the marsh.

At the close of the evidence the tenant requested the judge to rule as follows : " 1. Upon all the evidence in the case, the true boundary of the demandants' land, as described in the title deeds of said land, is the line of natural demarcation between the upland and marsh land mentioned in said deeds.    2. Upon all the evidence, the demandants cannot maintain their writ of entry. 3. If the course of the ancient ditch mentioned in the deeds under which the demandants claim title does not follow the line of natural demarcation between upland and marsh land, then the true southern boundary of the demandants' land would follow such line of natural demarcation, and not the course of said ditch."    The judge refused so to rule ; ruled, as matter of law, that the acts of the parties in connection with the descriptions contained in the deeds under which the parties derive their title were sufficient to show that the true southern boundary of the demandants' land was the ancient ditch mentioned in the writ ; and found for the demandants.    The tenant alleged exceptions.

*W. M. Noble,* for the tenant.

*J. W. Keith,* for the demandants, was not called upon.

ALLEN, J.   The original owner of the premises now owned by the demandants and by the tenant in 1792 conveyed to the tenant's predecessor in title a "tract of marsh land" bounded "northwardly on said Blaney upland, a ditch dividing said marsh from said upland," and in 1803 he conveyed to the demandants' predecessors in title "a certain piece of upland" bounded "southerly on marsh land, . . . a ditch dividing said upland from said marsh land." The ditch in fact did not exactly follow the line of demarcation between the marsh and upland, which line was curved inward towards the upland something in the form of a bow, but it was a straight cut across, like the string of the bow, so that some marsh land was between the ditch and the line of demarcation which separated the marsh from the upland. This marsh between the upland and the ditch is the land in controversy.

The general rule is familiar, that, when the description of granted premises is clear, extrinsic evidence is not admissible to control it ; but when it is uncertain, such evidence may be resorted to, and the acts of adjoining owners showing a practical construction adopted and acted upon are of great weight. *Stone* v. *Clark*, 1 Met. 378.   *Bond* v. *Fay*, 12 Allen, 86.   *Miles* v. *Barrows*, 122 Mass. 579.   *Lovejoy* v. *Lovett*, 124 Mass. 270. *Macdonald* v. *Morrill*, 154 Mass. 270.   In *Kellogg* v. *Smith*, 7 Cush. 375, there was evidence of the understanding and occupation of various and successive owners for more than one hundred years.

Such evidence was properly received in the present case ; and if upon the deeds themselves the true boundary line was doubtful, the evidence well warranted a finding that the true boundary was the ancient ditch.

*Exceptions overruled.*