LIGHTCAP v. PHILADELPHIA TRACTION CO.

(Circuit Court, E. D. Pennsylvania. January 23, 1894.)

No. 16.

1. STREET RAILWAYS—NEGLIGENCE—EVIDENCE—RES GESTAE.
   In an action for injuries to plaintiff, resulting from the collision of a cable car with his wagon, evidence that, while the vehicles were in actual contact, the gripman called out, "God damn you! Get out of the way," is admissible as part of the res gestae.

2. SAME—NEGLIGENT RINGING OF GONG—INSTRUCTIONS.
   There was evidence that plaintiff's horse was standing about 10 feet from the track, evidently very much frightened, as the cable car approached; that the gripman, when about 10 feet from where the vehicle was struck, saw the horse, and rang his gong very violently; and that

the horse thereupon became unmanageable, and jumped on the track, where the collision occurred. *Held*, that it was proper to charge that ringing the gong too violently, and too near a frightened horse, might be negligence, and that it was for the jury to say whether it was so, under the circumstances.

At Law. On motion for new trial. Action by John A. Lightcap against the Philadelphia Traction Company for negligence. There was verdict for plaintiff, and defendant seeks a new trial. Motion denied.

S. Morris Waln, for plaintiff.

Thomas A. Leaming, for defendant.

DALLAS, Circuit Judge. This is an action for the recovery of damages for personal injury sustained by the plaintiff in consequence of a wagon in which he was driving having been struck by a cable car of the defendant at the intersection of Market street and Eleventh street, in the city of Philadelphia. The cause having been tried, and a verdict rendered for the plaintiff for $5,000, the defendant moved for a new trial, and that motion has been argued and considered. Seven reasons have been assigned in support of the motion. The first three are that the verdict was against the law, the evidence, and the weight of the evidence. These do not require separate consideration, and the more specific assignments, with the exception of the seventh, do not seem to present any serious difficulty.

The fourth reason is that the court "erred in declining to strike out from the testimony the evidence of Joseph Smith, a witness for the plaintiff, who, in rebuttal, and without any evidence upon the subject in the plaintiff's case in chief, was asked by plaintiff's counsel, under objection and exception by defendant's counsel, and answered in the affirmative, whether he heard the gripman say, as the car and wagon were in actual collision, 'God damn you! Get out of the way.'" If my recollection of this matter—which accords with my notes of the trial—be not at fault, there is a mistake in this reason, as it is presented. I think there was no objection made to the question referred to, at the time it was asked, or to the answer, when it was made. But, be this as it may, it is certain that the motion to strike out was based solely upon the ground that the evidence to which it related was irrelevant, and that it was because it was held that the exclamation testified to was admissible as part of the res gestae that the motion was denied. No other point was made or passed upon. I am still of opinion that the ruling of the court was not erroneous, and I do not think that its action worked any injustice to the defendant.

The fifth reason is that the court "erred in affirming the plaintiff's points." This, however, was not pressed upon the argument. The instructions given to the jury upon the subject of damages were clearly correct; and I am satisfied that, if the plaintiff was entitled to anything, the verdict was not excessive.

The sixth reason is that the court erred in not giving binding instructions for the defendant. But neither upon the question of

negligence nor of contributory negligence was the evidence such that no conclusion or inference reasonably deducible therefrom would justify a verdict for the plaintiff.   On the contrary, the case, as presented, was, in my judgment, one that it would have been manifestly improper to withdraw from the jury; and, accordingly, it was left to them upon the facts, with instructions as to the law which fully covered the nine additional points submitted on behalf of the defendant.

The most important question is that which is raised by the seventh reason assigned.   In his brief, the learned counsel for defendant states that the court "charged that the jury might find defendant negligent in ringing the bell too violently, and too near a frightened horse;" and in this, it is alleged, there was error.   There was some evidence that the plaintiff's horse was standing on the Eleventh street track, about 10 feet from the Market street track; that he was obviously very much frightened by the approaching car; and that when the car, also, was about 10 feet from the intersection of the two tracks, the gripman so sounded his gong as to cause the horse to jump forward on the track, and thus cause the collision.   This, however, was not the theory upon which the plaintiff presented his case. His own testimony was to the effect that the car had been signaled to stop by a policeman, who at the same time directed him to proceed; and that he, in consequence, voluntarily drove upon, and was crossing the track when his wagon was struck.   Yet, as I have said, there was some testimony that the horse became uncontrollable; and was caused to spring upon the track, by the ringing of the gong; and it was with reference to this aspect of the case that, in his fifth point, the counsel for the defendant requested that the jury should be told that if the horse became unmanageable from having been scared by the ringing of the gong, and jumped in front of the cable train before it could be stopped, this would not be evidence of negligence.   The fifth point was, in other respects, affirmed, but with the qualification, as to this part of it, that the violent ringing of a gong in close proximity to a frightened horse might be negligence, but the question whether, if the gong was so sounded in this case, it was, under all the circumstances, an act of negligence, was submitted to the jury upon the evidence, and, of course, in connection with instructions as to what is meant by the word "negligence," as it is used in the law, to which no objection has been made.   But the contention for the defendant seems to go to the length of insisting that the ringing of the gong used upon cars of this character can never be wrongful, no matter under what circumstances or in what manner it may be done.   It is said (citing Steiner v. Traction Co., 134 Pa. St. 199, 19 Atl. 491,) that "the supreme court of Pennsylvania has decided, emphatically, that the alarm gong of these cable trains should be rung vigorously, and as often as possible, especially at crossings, and that there is no liability for the consequent frightening of horses."   This question is one not of local, but of general, law, and is to be determined upon principles which this court is not called upon to administer in harmony with the views of the court of last resort of the state in which the cause of action arose, but in

accordance with its own independent judgment, (Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914;) and, although inclining to lean towards agreement with the supreme court of Pennsylvania,—for whose judgments the highest respect is entertained,—it would not be possible for me to follow them, if, indeed, they maintained the broad proposition which the defendant asserts they support. Alarm gongs are now in use in Philadelphia and elsewhere to a very considerable extent, and are about to be even more extensively introduced. It is necessary that cars which are propelled by steam or electricity on crowded thoroughfares should employ some means of giving warning of their approach; and nothing, I believe, less objectionable than the gong, has as yet been devised for the purpose. Yet, while its proper use is therefore rightful, it is no less true that it may be so used as to endanger the safety of those who, equally with the operators of street railways, are entitled, without encountering unnecessary peril to person or property, to the enjoyment of the public highways; and it is not, in my opinion, too much to insist that a device which may both avert and occasion casualties shall be used with that degree of care which, under the circumstances, a man of ordinary prudence would exercise as well to avoid causing accidents as for their prevention. I agree that the law not only permits, but requires, the proper use of the gong; but this does not sanction its wanton and needless use, nor relieve from liability for any harm resulting from unnecessarily, recklessly, and violently ringing it, where, by due prudence, such harm might be properly avoided. And I cannot yield my assent to the proposition that because it is, in general, the duty of the gripman to ring his gong with sufficient emphasis upon proper occasions, therefore he may ring it violently in the face of a frightened horse, and without any necessity whatever. I must not be understood to imply that this was done in this case. But there was evidence tending to show that the plaintiff's horse so plainly evinced his fright that it could scarcely have failed to be observed by the gripman; that there was no person at the horse's head; and yet that the bell was rung within a few feet of him, without any apparent actual necessity. And this, I think, was sufficient to require that the plaintiff's point, that if the jury believed "that the horse became unmanageable from having been scared by the ringing of the gong, * * * and jumped in front of the cable train before it could be stopped, this is not evidence of negligence," should be qualified, as it was, by the statement that a gong might be so rung, and under such circumstances, as to amount to negligence; the question with respect to the character of the ringing, and the circumstances, as they appeared from the evidence, being left to the jury for decision.

I do not understand that the views I have expressed are necessarily in conflict with those of the supreme court of Pennsylvania, as disclosed in the case of Steiner v. Traction Co., supra, cited on behalf of the defendant. The right determination of each case of this character is dependent on its peculiar facts. The facts of that case were materially different from those of the present one, and that learned court does not anywhere say that in no case, and under

no circumstances, could liability arise from the sounding of a gripman's gong. But even if the judgment referred to should be understood as maintaining this extreme doctrine, and I, in consequence, be constrained to dissent from it, yet is it gratifying to note that the difference would be rather upon an assumption of fact than on a question of law. That eminent tribunal, apparently implying that its conclusion might have been different if the cause of the catastrophe in that case had been a steam whistle instead of a gong, said:

"There is no analogy between this case and the use of a steam whistle, wantonly blown in a crowded place. The steam whistle naturally tends to alarm horses. The traction bell does not."

My observation does not enable me to concur in this statement. My impression is that the traction bell does tend to alarm many horses, and that the difference in this respect between it and a steam whistle is only one of degree. Indeed, if some of the evidence in this case is believed, there can be no doubt that the plaintiff's horse was very greatly alarmed by the ringing of such a gong. And it may be added that, if the gripman saw the indications of fright which some of the witnesses testified that this horse exhibited even before the gong was rung, it must have been apparent to him that this particular horse was likely to be further alarmed by the noise of the bell, no matter what its effect might or might not be as to horses in general. I have discussed this subject at more length than I would otherwise have felt it necessary to do, because of the earnestness and ability with which counsel for the defendant has urged upon my attention the opinion of the supreme court of Pennsylvania, to which I have particularly referred. Since the foregoing was written, the judgment of that court in the case of Lott v. Railroad Co. has come to my attention; and as the opinion touches several matters which I have considered, and is not yet officially reported, I quote it in full, but without further comment:

"In view of the testimony, it was clearly the duty of the learned trial judge to submit the case to the jury; and he did so in a clear, concise, and impartial charge, of which the defendant company has no just reason to complain. To have instructed the jury as requested in either of the defendant's points recited in the first four specifications would have been plain error. Instead of showing 'that there was unnecessary or wanton sounding of the whistle,' etc., the testimony tended to prove quite the contrary. The defendant company's right to use Kensington avenue was not exclusive. It was in common with the public. And, wherever such common user of a highway exists, it is the duty of railway companies to exercise such watchful care as will prevent, as far as possible, accidents or injuries to persons and property. In such circumstances, a greater degree of care on the part of the railway company, as well as the public, is required. The degree of care to be exercised must necessarily vary with the circumstances of each case. Gilmore v. Railway Co., 153 Pa. St. 31, 25 Atl. 651. The testimony was also conflicting, and presented questions of fact which were necessary for the consideration of the jury. In any view that can be taken of the case, it could not have been withdrawn from their consideration. There is nothing in either the specifications of error that would justify a reversal of the judgment. Judgment affirmed." 28 Atl. 299.

The motion for new trial is denied.