## FRED ATWOOD

### *vs.*

## BANGOR, ORONO & OLD TOWN RAILWAY COMPANY.

Penobscot.    Opinion March 1, 1898.

*Negligence.    Proximate Cause.    Railroad.*

Generally, it is a defense to an action of tort that the plaintiff's negligence contributed to produce the injury. But, where the negligent acts of the parties are distinct and independent of each other, the act of the plaintiff preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care at the time by the defendant.

The contributory negligence of an injured party that will defeat a recovery must be such as proximately contributed to the injury.

A person may recover damages for an injury caused by the negligence of the defendant, although the negligence of the plaintiff first exposed him to the risk of injury, if such injury was proximately caused by the defendant's negligent act, committed after he had become aware of the plaintiff's danger.

If one discovers another to be negligent he must take precautions accordingly, omitting which he is liable to the other for the damages which flow from such new want of care.

In this case the jury found that by the exercise of reasonable and ordinary care and caution on the part of the motor-man a street railway car might have been so managed as to avoid a collision with the plaintiff's team. *Held;* that this finding is peculiarly a question of fact within the province of the jury; and the law court declines to set aside a verdict for the plaintiff.

On Motion by Defendant.

The case is stated in the opinion.

*P. H. Gillin and C. J. Hutchings,* for plaintiff.

*F. H. Appleton and H. R. Chaplin,* for defendant.

The care of a traveler must be such as would be exercised by a man of ordinary prudence, who knows that there is danger attending the operation of street cars, who knows that the trains of a company have a prior right of passage and who knows also that he cannot omit precautions on his part upon the assumption that there will be no negligence on the part of the company.

Booth on Street Railways, § 312, and cases cited, and § 315; *Kelley* v. *Hendrie,* 26 Mich. 255; 3 Elliot on Railroads, § 1095, and cases cited; *Adolph* v. *Central Park R. Co.,* 76 N. Y. 530; *Wheelahan* v. *Phila. Traction Co.,* 150 Pa. St. 187.

Failure of a motor-man to exercise ordinary care for the safety of a traveler whom he sees at or on the track unconscious of the approach of the car, will not relieve the latter from the consequences of contributory negligence. *Johnson* v. *Superior R. T. R. Co.,* (Wis.) 64 N. W. Rep. 753.

One who suffers his attention to be directed to the movements of another person and takes no precautions to avoid danger from moving trains cannot recover damages from injuries caused by a collision. 3 Elliot on Railroads, § 1164, citing *Jensen* v. *Mich.*

*R. Co.*, 102 Mich. 176, where the traveler was engaged in conversation with a companion.

Having a right to assume that the plaintiff would get out of the way, the motor-man was under no obligation to slacken his lawful speed until he saw some indication that the plaintiff was in danger. *Dailey* v. *Detroit, etc., R. Co.*, 63 N. W. Rep. p. 73; Booth on Street Railways, p. 414.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, WISWELL, STROUT, SAVAGE, JJ.

WHITEHOUSE, J. The plaintiff recovered a verdict of $140.63 for the loss of a horse and injuries to a wagon and harness resulting from a collision with one of the defendant's cars, and the case comes to the law court on the defendant's motion to have the verdict set aside as against the evidence.

The accident occurred on the afternoon of August third, 1896, on Gilman hill in Orono at a point about thirty rods distant from the brow of the hill. The plaintiff was on his way to Orono with a dump cart drawn by two horses, and at the point above named met an acquaintance by the name of Palmer with a hay-rack drawn by two horses on the way to Bangor. The plaintiff and Palmer stopped their teams to talk for a few minutes, and while standing there, according to the plaintiff's testimony the two teams were nearly opposite each other, Palmer's off wheel being in the ditch and the plaintiff's team between Palmer's and the railroad, about six inches from the track. While the plaintiff was thus engaged in conversation with Palmer, neither giving attention to his team nor exercising vigilance respecting the approach of the defendant's cars, one of the electric cars appeared on the brow of the hill, on schedule time. The plaintiff testifies that although he had an unobstructed view, and could have seen the car twenty-five or thirty rods away, he was not in fact aware of its approach until it was within ten rods of his team; that his horses then began to "prance round" and to back; that the sounding of the gong by the motor-man only "made it worse;" that the car was coming down the hill "four times as fast as he ever saw cars running in

Brewer;" and that before he had time to move his team the car was upon him, the collision occurred and the damage was done. The plaintiff accordingly contends that the defendant company should be held responsible for the injury because the car was running at an unusual and dangerous rate of speed, and by reason of the failure of the motor-man to use proper diligence to stop the car after it was apparent that a collision was inevitable.

On the other hand, the defendant insists that the car was running on regular time and at the usual rate of speed; that the motor-man commenced ringing his gong as soon as he saw the team from the brow of the hill; that the horses at first exhibited no signs of being frightened, and that he had a right to assume from the attitude and conduct of the plaintiff that there was no danger in proceeding in the ordinary manner; that as soon as he had reasonable ground to apprehend that the team would be an obstruction on the track, he reversed the power and promptly used all the means at his command to stop the car and prevent a collision. The defendant accordingly contends that there is no just ground of liability on the part of the defendant company; and that the injury resulted from the plaintiff's own negligence in using the highway under such circumstances for the purpose of having a social interview with another traveler, and from his gross inattention and apparent indifference to the movements of the defendant's cars.

It is impossible to resist the conclusion that the plaintiff himself immediately before the collision was not in the exercise of reasonable and ordinary care and caution under the circumstances disclosed by the testimony. Highways are constructed and maintained for the accommodation of travelers, and not as places of resort for business negotiations or social converse. All travelers with teams have equal rights on the highway, but each must exercise his right in a reasonable manner and use the way with due regard to the rights of others. And since highways have been subjected to a new mode of use by the introduction of street railways, a still higher degree of attention, vigilance and prudence is requisite to fill the measure of ordinary care demanded of the traveler. Travelers with teams, and proprietors of street cars still have concur-

rent rights and mutual obligations; but as the cars must run on a fixed track and rapidly acquire a greater momentum, they must to a reasonable extent be allowed the right of way.  As stated by the court in *Flewelling* v. *Lewiston & Auburn Horse Railroad Co.*, 89 Maine, 593 : " Electric street cars have in a qualified way at least, the right of way as against persons on foot or traveling with carriages and teams in the same manner as ordinary steam railroads have.  And all persons passing on foot or traveling by the common methods on the highways should carefully observe the movements of the street cars and leave them an unobstructed passage as well as they can."

On the other hand, it is scarcely less difficult to resist the conclusion that, upon the facts reported, the jury were fairly authorized to find that the defendant's servants in charge of the car, on the occasion in question, failed to exercise that degree of precaution in slackening the speed of the car, which the exigencies of the situation demanded.

It is not in controversy that the plaintiff's team was standing within six inches of the rail of the defendant's road, and in view of the fact that the lateral projection of the car over the wheel and the track is about twice that distance on each side, the team was as certainly an obstruction to the free passage of the car as it would have been if one wheel of the cart had been between the rails.  When the car arrived at the brow of the hill thirty rods distant from the team, the motor-man's view of the team was entirely unobstructed.  He admits that he saw the team at that point; and if he had observed its relative situation attentively, it must have been apparent to him at once that a collision was inevitable unless the position of the team was promptly changed, or the car seasonably stopped.  When twenty-five rods away he did not fail to observe that the plaintiff was absorbed in conversation and apparently unconscious of the approach of the car.  If it be conceded that the statement of the conductor was correct, that the car was running at the rate of only seven miles an hour after it went over the brow of the hill, it required only about forty seconds to run a distance of twenty-five rods.  Fifteen rods more were

traversed at this rate, and in sixteen seconds more the remaining ten rods would be covered. But the plaintiff made no movement to change the position of his team, being still ignorant of the rapidly approaching car; and still the motor-man did not slacken its speed. It may be true that the horses gave little or no indication of fright up to this time; but if the team remained stationary within "four or six inches" of the track, a collision was unavoidable unless the car was stopped. Under these circumstances, with little more vigilance and caution on the part of the motor-man, it might reasonably have been anticipated that with no change in the speed of the car, an accident would happen either in the way it did occur or in some similar way. But so far as appears the car was allowed to proceed, though on a descending grade, at the same rate of speed at which it had been running during the preceding "three or four hundred feet," until within twenty feet of the team, when, according to the defendant's contention, the horses for the first time showed signs of fright and at once dashed upon the track, and when, too, it is fairly to be inferred from the defendant's evidence it was impossible to stop the car before it struck the horse.

The views of the court respecting the duty of the motor-man under such circumstances are also stated in *Flewelling* v. *Lewiston & Auburn Horse Railroad Co.*, supra, as follows: "But great care must also be observed by conductors and drivers, or motor-men, upon the cars, to see that no injury be caused by themselves to persons or teams. Street railroads are granted very great privileges out of the public right, and their treatment of the public must be reasonable in return; so that when a person or a team, through accident or misjudgment or for any cause, be caught in a position of any peril by coming in collision or close contact with the cars, it is the duty of those who are managing the cars to use all possible effort, by slackening the speed of a car or stopping it altogether, in order to avoid an injury."

It is undoubtedly true that the plaintiff's prior negligence in a certain sense contributed to produce the accident; that is to say, if the plaintiff had not stopped to talk in the street, with his team

stationed so near the track, there would probably have been no collision and no damage. But the contributory negligence of the injured party that will defeat a recovery must have contributed as a proximate cause of the injury. *Pollard* v. *M. C. R. R. Co.*, 87 Maine, 55; Cooley on Torts, 816. "In all cases where negligence on the part of the plaintiff is connected with the cause of injury, the question to be determined is whether the defendant, by the exercise of ordinary care and skill, might have avoided the injury. If he could have done so, the negligence of the plaintiff cannot be set up as an answer to the action." 2 Wood on Railroads, § 319 a; Addison on Torts, 41. So in *O'Brien* v. *McGlinchy*, 68 Maine, 557, the court say: "Generally, it is a defense to an action of tort that the plaintiff's negligence contributed to produce the injury. But . . . . where the negligent acts of the parties are distinct and independent of each other, the act of the plaintiff preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care at the time by the defendant." In Bishop's Non-Contract Law, § 66, the rule is thus stated: "It is sometimes very correctly said that if one discovers another to be negligent he must take precautions accordingly, omitting which he is liable to the other for the damages which flow from such new want of care. For however nearly related two several negligences may be, the one cannot bar an action for the other unless it is contributory, and although an unseen position might contribute to an accident a discovered one cannot." See also *Benjamin* v. *Holyoke Street Railway Co.*, 160 Mass. 3; *Glazebrook* v. *West End Street Railway Co.*, 160 Mass. 240.

Under instructions which must be presumed to have been adequate and appropriate in the case before the court, the jury evidently reached the conclusion that by the exercise of reasonable and ordinary care and caution on his part, the motor-man might have so managed his car as to avoid a collision with the plaintiff's team. It was peculiarly a question of fact within the province of the jury to settle, and this court does not feel justified in setting aside their verdict.          *Motion overruled.*