# DONG CHONG *v.* HONOLULU RAPID TRANSIT & LAND COMPANY.

## Exceptions from Circuit Court, First Circuit.

### Argued November 10, 1904. Decided November 28, 1904.

### Frear, C.J., Hartwell and Hatch, JJ.

After having left a team of gentle mules hitched in a narrow place between the sidewalk and car tracks where they had been hitched on previous occasions and from where cars could be seen when several hundred yards away, the plaintiff unhitched the mules and took his seat on the wagon, when he saw defendant's electric car coming about fifty feet away. He tightened the reins and put on the brake. When the car was abreast of the mules, they suddenly shied towards the car, in consequence of which one of them was struck and injured, so that it had to be killed. The car, although on a down grade, was then stopped in about sixty-five feet. Plaintiff and another witness testified that the car was going at an unusually rapid rate. In an action for damages, a nonsuit was ordered. Held,

STREET CAR ACCIDENT—*contributory negligence—proximate cause—rights of public and electric cars on streets.*

It was not as matter of law such contributory negligence as would preclude a recovery, to hitch the mules in a narrow place, or not to look to see if a car was approaching before unhitching or not to delay unhitching until the car had gone by. If such acts or omissions constituted negligence, that would not necessarily

relieve the defendant of responsibility. Plaintiff and defendant had equal rights to the use of the street, and, although defendant had superior rights to some extent in the use of the tracks, its servants were bound to exercise due care to avoid injury to the plaintiff's person or property. Though one places himself or his property in a position of danger, another cannot wilfully or recklessly or carelessly injure him or it, even by doing what ordinarily may rightfully be done. The latter, upon being apprised of the danger, must avoid it if he can reasonably. If he does not, he is liable, his negligence in such case being the proximate, and the other's negligence only the remote cause of the injury.

ID.—*negligence—proof—rate of speed.*

The burden of proof is on the plaintiff to show negligence on the part of the defendant. It is not sufficient to show that the accident occurred, or to show facts as consistent with care and prudence as with negligence. Nor is negligence shown when the circumstances were such that the car might properly run at a usual or proper speed and was running without unusual sights or sounds, and there was only indefinite testimony that it was running at an "unusual speed" and definite testimony by plaintiff himself that, though on a down grade, it was stopped in about sixty-five feet, that there were no indications that the mules were frightened until the car was abreast of them, that the accident would not have happened but for their sudden shying and that there was no time to avoid a collision after they did shy.

OPINION OF THE COURT BY FREAR, C.J.

This is an action for $123.75 damages caused to plaintiff's mule, wagon and harness by a collision with one of defendant's electric street cars. The district magistrate, who first tried the case, ordered a nonsuit, and at the trial before a jury on appeal, the circuit judge also, at the close of the plaintiff's evidence, ordered a nonsuit, on the ground that the plaintiff had failed to show negligence on the part of the defendant—the latter's motion for such nonsuit having been made on that ground and the additional ground that the evidence showed contributory negligence on the part of the plaintiff. The question raised by the exceptions is whether error was committed in ordering the nonsuit.

The collision occurred on January 7, 1903, on the upper side of King street about 150 feet south of the junction of King and Beretania streets in Honolulu. The plaintiff had hitched his team of mules and wagon to a telephone pole near the sidewalk facing north, spent a short time making a purchase in a store at that place, returned to the mules, unhitched them, mounted the seat of the wagon and picked up the reins, when he saw the car coming towards him about fifty feet away. He then held the reins tight or pulled them and put on the brake. When the car was abreast of the mules they shied toward the car, which struck and broke one of the hind legs of the near mule, making it necessary to kill the mule, and broke the pole of the wagon, and the harness. The car could have been seen approaching for a distance of several hundred yards. It came on a slight down grade. The motorman sounded the gong shortly before reaching the team (the plaintiff thinks he did not hear it), but did not begin to slow down until the accident occurred and then he stopped the car after running about sixty feet. The distance between the track and the curbing, which was a few inches in height, was nine feet and some inches where the wagon was, and seven or eight feet where the mules' heads were, this narrower distance at the latter point being due, according to the evidence, to the presence of the telephone pole there and perhaps partly to a slight curve or slant in the track or curbing which brought them nearer together. It does not appear how far the running board of the car extended beyond the rails. The box of the wagon was about four feet wide and the width of the wagon at the hubs was a little less than six feet. The mules were gentle, and were standing quietly until the car was opposite them. They had been tied at the same place on previous occasions when cars had gone by. The plaintiff testified that there was room enough for the wagon and attributed the accident to the shying of the mules due to their feeling a dash of wind caused by the car going at a "rapid rate," an "unusual speed," a "very unusual rapid rate." Another witness said that the car was "running in a very rapid rate," at an "unusually rapid speed on this occa-

·sion." A third witness said that the car was going at a "rapid rate."

We cannot say as matter of law that the plaintiff was guilty of such contributory negligence as would preclude him from recovering damages, if he had shown negligence on the part of the defendant. He had an equal right with the defendant to the use of the street. His mules were gentle. They had stood there on previous occasions when cars had gone by. There was room enough. The mere fact that he hitched them in a narrow place would not necessarily show negligence on his part. See cases *infra.* Nor would negligence necessarily be shown by his not first looking up the street to see if a car was coming and not delaying to unhitch the mules until after the car had gone by. If he had left his mules unhitched or if he had placed himself in such a position that he could not hold or control them in the usual way, and the motorman was not apprised of any special danger, the case might have been different. *Winter v. Fed. etc., Ry.,* 153 Pa. St. 26; *Gilmore v. Fed. etc., Ry.,* 153 Pa. St. 31. But here he was in his seat with the reins well in hand and the brake down at the time of the accident. As we shall see later on, it would not have been negligent on the part of the motorman to have passed at the usual or at a proper speed if there was room enough and nothing to lead him to anticipate danger from the action of the mules; and his negligence, if any, arose from his going at an unusual rate. Did not, then, the fact that the car was approaching at an unusual speed make it negligent for the plaintiff not to look and discover the fact and refrain from unhitching until the car had passed, even if his action would not have been negligent in case the car was approaching at a usual or proper rate? Not necessarily. He was not obliged to be on the lookout for unusual or improper speed when there was nothing to lead him to expect such speed, and if he had discovered that the car was coming at such speed while it was yet a long way off, he might reasonably expect it to slow down to a usual or proper speed before reaching him, just as a motorman may ordinarily expect a person or team on the track to leave it in time to avoid

a collision; and if the motorman kept a proper lookout and saw in time that the defendant had unhitched, he would have to govern himself accordingly. To continue at an unusual speed then might be negligence that would be the proximate cause of the injury while the negligence, if any, of the plaintiff might be only the remote cause. The most that can reasonably be contended is that the question of contributory negligence was one that under the circumstances could properly be left to the jury. Even if it were negligent to hitch the mules in such a narrow place or to unhitch them before the car had passed, the plaintiff would not necessarily be barred from recovering. He might even have left his team and wagon upon the defendant's tracks or so near to them that the car would certainly strike them if not stopped, and so be guilty of negligence, and yet be able to recover. For, although the defendant's cars may have superior rights to some extent upon its tracks, its motormen cannot wilfully or recklessly or carelessly disregard or endanger the personal or property rights of others. The negligence of the plaintiff may be prior in time and independent and distinct from that of the defendant's servants and only the remote cause of the accident, and that of the defendant's servants may consist in a failure to exercise due care in not discovering the danger or in not avoiding it after discovering it, and be the proximate cause. *Atwood v. Railway Co.,* 91 Me. 399; *Laetham v. Railway Co.,* 100 Mich. 297; *Oddie v. Mendenhall,* 84 Minn. 58; 86 N. W., 881; *Koch v. St. P. City R. Co.,* 45 Minn. 407; *Kestner v. Traction Co.,* 158 Pa. St. 422; *Higgins v. Wilmington, etc., Co.,* 41 Atl. (Del.) 86; *Redford v. Spokane R. Co.,* 15 Wash. 419.

The question whether the defendant was free from negligence as a matter of law is one of greater difficulty. The burden, of course, is on the plaintiff, in order to maintain his case, to show negligence on the part of the defendant. The mere fact that the defendant's car ran into the plaintiff's team or that the accident occurred is not sufficient. *Graham v. Consol. T. Co.,* 44 Atl. (N. J.) 964. Nor is it sufficient to show facts as consistent

with care and prudence as with negligence. *Hayes v. Forty-second, etc., Co.,* 97 N. Y. 259. Negligence is want of due care under the circumstances. If a team is moving on or near the track in front of a car it might ordinarily be negligent for the motorman of the car not to sound the gong, and yet under certain circumstances it might be negligent to sound it, as, for instance, if the team was in a position of danger and was apparently frightened at the car or the sound of the gong (*Lightcap v. Phila. T. Co.,* 60 Fed. 212; 61 Fed. 762; *Benjamin v. Holyoke, etc., Co.,* 160 Mass. 3; *Ellis v. Lynn, etc., Co.,* 160 Mass. 341; *Gibbons v. Railway,* 155 Pa. 279; *Oddie v. Mendenhall,* 84 Minn. 58), but, on the other hand, it might not be negligent to sound the gong or to continue at the usual speed even if the team was frightened, as, for instance, if there was ample room for it and it was not greatly frightened and was apparently under control, in other words, if it was apparently not in a position of danger (*Eastwood v. La Crosse, etc., Co.,* 94 Wis. 163), and a fortiori if there was nothing in the behavior of the team up to the time of the accident to indicate danger. *Henderson v. Greenfield, etc., Ry.,* 172 Mass. 542.

Likewise if a team is tied on or near the track or held standing or driven in a narrow place near the track, the question of negligence on the part of the defendant depends on the circumstances. As shown above, the defendant in running its electric cars has no such superior rights as will permit it to run its cars wilfully or carelessly over persons or into teams upon or near its tracks even though they are there through negligence. On the other hand, rapid transit has become a public necessity, and electric cars cannot turn out. These conditions are generally known and persons using the streets must act accordingly. They cannot rightfully obstruct the cars nor can they place themselves or their property in positions on or near the tracks of the cars except at their own risk, subject to the exercise of due care on the part of those running the cars. If they are guilty of negligence which proximately contributes to the injury, they cannot recover. Those running the cars may expect others to exercise

proper care under the circumstances, and may ordinarily proceed on the theory that those who place their teams near the tracks do so with knowledge of the circumstances and with the understanding that it is safe for the cars to run as usual. Even if the team or vehicle extends so near to the track that there is not room for the car to pass without a collision, the circumstances may be such as to warrant the jury in finding that the accident was due merely to an error of judgment on the part of the motorman using due care in estimating the distance and not due to negligence on his part (*Butler v. N. Y., etc., Co.,* 177 Mass. 191), and the plaintiff's evidence may be such as to show that the collision was due to a mere error of judgment on the part of the defendant's servant in estimating the distance, as, for instance, if it shows that the plaintiff himself likewise erred in that respect, in which case a nonsuit may be ordered. *Patton v. Traction Co.,* 132 Pa. St. 76. If the defendant runs into a vehicle when there is not room enough to pass, it may be *prima facie* evidence of failure to exercise due care under the circumstances, but if the collision is the result of the mules or horses suddenly backing or shying when it is too late for the motorman to stop and when there are no previous indications that the animals are frightened and the car is proceeding as usual, there is no liability. *North, etc., v. Tiffens,* 14 S. W. (Tex.) 1067. If the evidence is conflicting as to whether the lack of room to pass was due to the fact that the vehicle was already too near the track so that the motorman knew or ought to have known it, or to the sudden misbehavior of the horses or mules, it is a question for the jury. *Higgins v. Wilmington, etc., Co.,* 41 Atl. (Del.) 86; *Kestner v. Traction Co.,* 158 Pa. St. 422. The presumption is that teams hitched near a street car track are used to the cars and that the cars may run by them in their usual way.

In the present case the evidence shows beyond dispute that there was room enough for the car to pass and that the accident would not have happened but for the sudden shying of the mules. The defendant would not be liable even if the shying of the mules was caused by the car, provided the latter was proceeding

in a usual or proper manner.  If it was not proceeding in such a manner it was because it was moving at an unusual speed.  It was solely because of an unusual speed, if at all, that a case has been made out for the jury on the question of negligence.  Unfortunately the plaintiff does not appear to rely upon this to any great extent, if at all.  There is no allegation in the complaint as to the speed.  Apparently no special effort was made at the trial to show such a rate of speed as would in itself, and irrespective of the position of plaintiff's team, show negligence.  At the argument he seemed to proceed largely on the theory that the team was already so near the track that it would be hit unless the car was stopped, but the evidence shows the contrary.  He relies also in part on the supposed duty of a motorman upon seeing a person or team in a position of danger to get the car under such control as to be able to stop it instantly in case the threatened danger is not averted.  But, even assuming that this is a correct statement of the principle, it has no application to the facts of this case.  We are then thrown back upon the sole question of speed—upon which the plaintiff does not rely except as incidental to other contentions.  It is not contended that the mules shied because they saw the car moving rapidly or because its rapidity produced unusual or undue sounds.  Indeed, they did not shy or even appear disturbed until the car was abreast of them.  Mere speed or noise, even though they caused the fright of the mules, would not, of course, render the defendant liable unless there was a violation of duty.  *Doster v. Charlotte S. R. Co.,* 117 N. C. 651; 34 L. R. A. 481; *Henderson v. Greenfield, etc., Co.,* 172 Mass. 542; *Yingst v. Lebanon, etc., Co.,* 167 Pa. S. 438; *McCerren v. Alabama, etc., Co.,* 18 So. (Miss.) 420; *Ohio V. R. Co. v. Young,* 39 S. W. (Ky.) 415.  This is not the case of a team moving upon the tracks in front of the car under circumstances requiring the motorman to have such control of the car as to stop it, if necessary, in order to avoid a collision.  It must be treated as the case of a team off the tracks and as if the mules had run away and collided with something else than the car.  The fact that it collided with the car is immaterial.

The defendant would have been equally liable, if liable at all, if the mules had shied the other way and struck the telephone pole, though the extent of the damage might not have been so great. The liability, if any, resulted from conducting the car negligently so as to frighten the mules, not so as to run into them. As shown above, the defendant would not be liable for proceeding at a proper speed when, as here, there were no signs of fright on the port of the mules until the car was opposite them. Even if the car were moving at an unusual rate of speed and the mules suddenly ran in front of or against the car, but not in consequence of fright caused by the car there, would be no liability. That would be a pure accident or the result of negligence or conduct for which the defendant was not responsible. *Kline v. Electric T. Co.*, 181 Pa. St. 276; 37 Atl. 522. In the present case there was no evidence as to the actual speed of the car, or that it was going faster than allowed by law—eight miles an hour—at that point, or that it was going faster than reasonably prudent, or as to the circumstances which would tend to show what would be a reasonably prudent rate along that portion of that street. One witness said that the car was going at a "rapid" rate. The plaintiff and another said the rate was "unusually rapid." These are very indefinite expressions. They are not made with reference to any criterion or standard. To say that a car was going at a rapid rate means little or nothing for present purposes. What would seem a rapid rate to one might not to another. What would be a rapid rate under some circumstances might not be such under other circumstances. Electric cars, moreover, usually have a right to go at a rapid rate. To say that a car was going at an unusually rapid rate means little more, when the rate of speed is all there is that can be relied on as tending to show negligence. On the other hand, these witnesses said that the motorman did not begin to slow down until the accident occurred and that then he stopped the car in from thirty to sixty-five feet, according to the different estimates, and that, too, though the car was on a down grade. This fact controls vague expressions like those

set forth above.  *Flaherty v. Harrison,* 98 Wis. 559; *Stafford v. Chippewa, etc., Co.,* 110 Wis. 331; *Graham v. Consol. T. Co.,* 44 Atl. 964.  See also *Yingst v. Lebanon, etc., Co.,* 167 Pa. St. 438, on evidence as to rate of speed.  Thus, we have a case in which the car might properly proceed at a usual or proper rate of speed, no testimony or contention that there were any unusual sights or sounds, no definite testimony that the car was proceeding at an excessive speed, plaintiff's own definite testimony that the car was stopped in so short a distance as to indicate that its speed was not excessive, that there were no indications of fright until the car was abreast of the mules, that the accident would not have occurred but for their sudden shying, and that there was no time to prevent a collision after they did shy.  This was not sufficient to sustain the burden of proof that the motorman failed in his duty.  Notwithstanding this conclusion we may add that we deem the case a close one and that it is with considerable reluctance that we sustain the action of the trial court in taking it from the jury and we would even emphasize the need of attentiveness on the part of motormen of electric cars to exercise due care under all circumstances to avoid injury to the persons or property of others.

The exceptions are overruled.

*J. A. Magoon, J. Lightfoot* for plaintiff.

*Castle & Withington* for defendant.