# OMOTO BUNHICHI v. HONOLULU RAPID TRANSIT & LAND COMPANY.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED OCTOBER 7, 1907.        DECIDED NOVEMBER 11, 1907.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

NEGLIGENCE—*evidence to go to jury.*

> Plaintiff's son jumped or fell from defendant's car just starting from a transfer point on a dark night, and lay prostrate until struck and crushed by another car following about one hundred feet behind on a parallel track. The motorman of the latter car did not see the boy, having glanced behind while his car was in motion to see when an alighting passenger jumped off. Held that the question of defendant's liability was properly left to the jury.

#### OPINION OF THE COURT BY BALLOU, J.

This is an action for damages for negligently causing the death of the plaintiff's son who was killed near the transfer point called Pawaa junction on the evening of June 1, 1905. A verdict was rendered against the defendant for $650. The

only exceptions brought before this court are those relating to the refusal of the trial judge to direct a verdict in favor of the defendant and afterwards to render judgment for the defendant non obstante veredicto.

The circumstances of the accident appear from the evidence to be as follows: At about nine o'clock on the evening in question, the night being dark, plaintiff, a Japanese, and his family were returning from Honolulu to their home at Waialae. The family comprised the plaintiff, his wife and three children. They rode from Honolulu to Pawaa junction in a King street car and at the junction attempted to transfer to the Waialae car which was standing on a parallel track. For some reason, the evidence of which is in dispute, only the eldest son, a boy of nearly nine years named Omoto Kyofu, was on the Waialae car when it started. Apparently realizing that he was separated from his parents he stepped on the running board of the moving car and either jumped or fell to the ground striking upon his back or shoulder outside the rails of the track immediately makai but sufficiently near to be struck by a passing car. The King street car started soon after the Waialae car, following it at a distance of about one hundred feet on the parallel track in the same direction. The motorman had received a bell signal to stop at Artesian street and slowed down. He then glanced around, saw a passenger jump off, and without stopping or receiving any second signal from the conductor increased his speed again. He did not see the prostrate form of the boy, although a passenger on the Waialae car, looking back, saw it quite plainly by the headlight of the King street car. Neither the motorman nor the conductor attached any significance to a slight jar they felt nor could they definitely locate its time with regard to the slowing up. The car did not stop until passengers from the Waialae car came running back shouting. The boy had been dragged some distance and was picked up badly crushed and dead.

Defendant's motions for a directed verdict and judgment non obstante veredicto are substantially that the clear

and uncontradicted evidence, capable of only one construction and inference, showed no negligence on the part of the defendant, but did show contributory negligence on the part of both the deceased child and his parents, and further that the death of the child might have resulted from a cause for which the defendant was not responsible.

Many principles of law applicable to this case have been considered in *Dong Chong v. Rapid Transit Co.,* 16 Haw. 272, and *Ferreira v. Rapid Transit Co.,* 16 Haw. 615. While there has been some discussion as to whether the existence of negligence in a particular case is in its ultimate analysis a question of law or fact, there is no doubt of the propriety of leaving this question to the jury. A clear exposition of the rule in such cases is the one laid down by the supreme court of the United States in a case where the trial court had given the following instruction to the jury:

"You fix the standard for reasonable, prudent and cautious men under the circumstances of the case as you find them, according to your judgment and experience of what that class of men do under these circumstances, and then test the conduct involved and try it by that standard; and neither the judge who tries the case nor any other person can supply you with the criterion of judgment by any opinion he may have on that subject."

In upholding this instruction Mr. Justice Lamar said:

"But it seems to us that the instruction was correct, as an abstract principle of law, and was also applicable to the facts brought out at the trial of the case. There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated

the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." *Grand Trunk Railway Co. v. Ives*, 144 U. S. 408, 417.

We are of the opinion that reasonable men might fairly differ in this case as to whether a proper lookout was kept by the motorman of the King street car and whether if a proper lookout had been kept there was a chance to avoid the accident after the boy had fallen near the track. In this view of the matter it becomes immaterial whether or not it was through the negligence of the deceased or his parents that he was in the position where he was struck by the car.

It is contended for the defendant that the street car company was under no duty to the deceased to keep a lookout for him as he was not making a lawful use of the street at the time. An unlawful use of the highway, however, would not preclude the plaintiff from recovery if due care on the part of the defendant might still have prevented the injury. *Davies v. Mann*, 10 M. & W. 546. An analogy is sought to be drawn between the deceased in this case and a trespasser on the track of a steam railroad, in which case the railroad company is ordinarily held to the duty to use reasonable care after the trespasser has been seen but to no obligation to keep a lookout for him. The underlying reason for this rule, however, is that the situation is such that the company has no reason to expect any person to be on its exclusive right of way at that particular point. *Tutt v. Illinois Central Ry. Co.*, 104 Fed. 741; *Frye v. St. Louis, etc., Ry.*, 200 Mo. 377; 8 L. R. A. (N. S.) 1069. By its own terms

it would not be applicable to an electric car on a city street, and the cases most relied upon by the defendant are careful to emphasize this difference.

"The duty of the driver of an electric car passing along a sparsely settled country road in the space between intersecting roads is not to be judged by the same rules with regard to speed which apply to the same car passing along the crowded street of a city. The care to be exercised is relative and must be proportioned to the danger reasonably to be apprehended at the time and place. *Slell: v. McNulta,* 99 Fed. 138;" *Vizacchero v. Rhode Island Co.,* 26 R. I. 392; 69 L. R. A. 188.

In this case the defendant was using a city street near one of its own transfer points, where the presence of pedestrians and other persons lawfully on the street was to be anticipated, and we cannot concede as a rule of law that no lookout should be kept. We have already held that the grant of a right of way (R. L. Sec. 845), does not lessen defendant's duty to exercise due and proper care to avoid causing injury to other persons. *Fuller v. Rapid Transit Co.,* 16 Haw. 1. It has been urged that streets are not made to lie down in and that the degree of care which would enable a motorman to observe a pedestrian would not enable him to discover the unexpected presence of a prostrate body near the track. The same argument was used in a Missouri case where the man killed had fallen into a conduit in a tunnel, where his presence was far less likely to be anticipated than here, but the court held that negligence was still a question for the jury. *Fearons v. Kansas City Ry. Co.,* 180 Mo. 208. The general principle remains that the law at all times requires such care as men of ordinary prudence would use under similar circumstances, and the amount of care which prudent men would exercise under the circumstances of this case is just as much a question for the jury as the further and ultimate question whether the defendant's agent did use that amount of care. It cannot be denied that courts are prone, either by expressions of opinion or by the acceptance of successive verdicts of juries, to fix standards of prudence in particular cases which crystallize into rules of law, but until the

standard reaches the point where reasonable men might not differ about it, this is an invasion of the proper function of the jury. *Metropolitan Ry. Co. v. Wright,* 11 App. Cas. 152. We are disposed to lay down as few arbitrary rules of conduct as possible. The application of the law to the particular circumstances of each case may be covered by the charge to the jury, and no exceptions to the giving or refusal of instructions having been brought before us we must assume that the ground was fully and fairly covered by the trial judge.

It is also contended that the admitted fact that the motorman did not see deceased at all was due to the fact that he was engaged in the "paramount duty" of glancing behind him to look after the safety of the passenger who proposed to alight at Artesian street. We know of no source from which this alleged duty arises. It is not imposed upon the motorman by statute nor by any principle of law, nor is it at all clear why it should be paramount to the duty of keeping a lookout ahead. The phrase "paramount duty" is used in *Culbertson v. Metropolitan St. Ry. Co.,* 140 Mo. 35; 36 S. W. 834, but with a meaning wholly inapplicable to the circumstances of this case. There one cable road crossed another, and the gripman was obliged to look for the grip-trap on the track and let go his grip at the point marked in order to avoid a severe accident to his car. In this case no reason is shown why the conductor should not be charged with the duty of looking after alighting passengers, signalling by bell to the motorman. We regard the fact that the motorman, while his car was still in motion, looked behind to see if the passenger had jumped off not as relieving the company from liability, but as material evidence supporting the verdict. *Schnur v. Citizens' Traction Co.,* 153 Pa. St. 29.

In respect to the immediate cause of the boy's death the defendant argues that it might just as likely have been caused by the fall from the Waialae car as by the subsequent running over by the King street car and that the negligence in the operation of the King street car is all that is complained of in the declaration. This again, however, is a question of fact upon

which there is evidence to support the verdict. The matter is not entirely one of conjecture. The boy's fall was described with considerable particularity by one witness who watched him from the time that he left his seat until he was struck by the King street car, and although there is no direct evidence that he was alive while lying on the ground, the circumstantial evidence was such that the jury were at liberty, under proper instructions from the court, to draw their own deductions.

The exceptions are overruled.

*E. C. Peters* for plaintiff.

*D. L. Withington* and *John W. Cathcart* (*Castle & Withington* on the brief) for defendant.