KNOXVILLE TRACTION CO. *v.* DON MULLINS.

(*Knoxville.*   September Term, 1903.)

1. **VERDICT.** For injuries caused by negligence of street car com-
   pany is supported by the evidence, when.

   Material evidence showing that the motorman of a street car
   saw, or could have seen by the exercise of due diligence, that a
   horse in front from eighty to one hundred yards distant, was
   much frightened, and was putting its rider in imminent peril,
   and that he permitted his car to approach at a rapid rate of
   speed, all the while sounding his gong or bell, until the car
   passed the place where the accident occurred, and thus so
   frightening the horse as to cause it to throw the rider who was
   thereby seriously injured, is sufficient to support a verdict
   against the street car company and in favor of such rider.
   (*Post, pp.* 331-332.)

2. **STREET RAILROADS.** Liable for negligence of motorman in
   causing injuries by frightening horse, when.

   Where it reasonably appears to a motorman or other person in
   charge of a street car that a horse is so frightened as to become
   unmanageable, and is placing some one in imminent danger, he
   should stop sounding his gong or bell, and then and there stop
   the movement of his car, so as to prevent the threatened injury,
   and his failure to do so renders the street car company liable
   for the resulting injuries.    (*Post, pp.* 331-332.)

   Cases cited and approved:  Traction Co. v. Lightcap, 61 Fed., 762,
   10 C. C. A., 46; Benjamin v. Railroad, 160 Mass., 3; Ellis v.
   Railroad, 160 Mass., 341.

3. **SAME.**  Contributory negligence is a question for the jury un-
   der proper charge.

   Whether it is prudent or negligent for the rider of a young and
   skittish horse, which showed fright at a street car overtaking

him, in not turning off the street on which the car was running, is a question for the jury under proper instructions. (*Post, pp.* 332, 334-335.)

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County.— JOSEPH W. SNEED, Judge.

WEBB, MCCLUNG & BAKER, for Traction Co.

SHIELDS & MOUNTCASTLE and SANSOM & WELCKER, for Mullins.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The defendant in error sued to recover from plaintiff in error damages sustained by him from its alleged negligence in so operating one of its cars as to frighten the horse which he was riding so as to cause it to throw and seriously injure him.

The record shows that he was coming into the city of Knoxville on Broad street, and that as he entered the street the car passed him, going north to its terminus. His horse indicated some degree of fright or nervousness at the approach of the car, but at the moment of its passage a covered wagon intervened between it and the car, and he (defendant in error) had no difficulty in

controlling it.    After reaching the terminus, the car re-
turned, going south on Broad street, and in the same
direction with the defendant in error.    The horse, evi-
dently nervous, on hearing the approaching car, turned
its head, and, discovering it, began immediately to rear
and plunge.    At that moment the car was descending
a slight grade.    There is material evidence to show that
the motorman saw, or could have seen if he had been
exercising due diligence, when distant from the defend-
ant in error from eighty to one hundred yards, that the
horse was much frightened, and was putting its rider
in imminent peril; and that he permitted his car to ap-
proach at a rapid rate of speed, all the while sounding
his gong, until the car passed the place where the acci-
dent occurred.

Upon this state of facts we think the verdict of the
jury is sustained, and the circuit judge cannot be put
in error for declining to grant to the defendant below
a new trial.

While it is true that street railroads are not liable
"for accidents arising from fright to horses caused by
the usual operation of its cars if its employees are free
from negligence, yet if one in charge of a car sees that
a horse is frightened, and injury is imminent, it is his
duty to refrain from sounding his gong or to stop the
car.    To continue to sound it under such circumstances
would be such legal misconduct as would render the
company liable for resulting injury."    Nellis Street
Surface Railroads, p. 329.    It is not to be understood

from this that the employee in charge of the moving car on a public thoroughfare is obliged, at the peril of subjecting his employer to a recovery for damages, to stop the usual methods employed in running street cars every time he sees a frightened horse in the street. But we think the safety of those who ride or drive horses along these highways requires an enforcement of the rule that, where it reasonably appears a horse is so frightened as that it is unmanageable, or is otherwise placing the one in charge or others in imminent danger, the motorman should stop sounding his gong or bell, and also stop the movement of his car, and thus prevent, if it may be, a threatened injury. To continue to run his car at a rapid rate upon the frightened animal, and to ring his gong or bell, are acts of wantonness, which should make the master liable for the injuries that result therefrom. *Phil. Tract. Co.* v. *Lightcap,* 61 Fed., 762, 10 C. C. A., 46; *Benjamin* v. *Holyoke R. R. Co.,* 160 Mass., 3, 35 N. E., 95, 39 Am. St. Rep., 446; *Ellis* v. *Lynn & B. R. Co.,* 160 Mass., 341, 35 N. E., 1127.

In his instructions to the jury the circuit judge clearly announced the rules of law affecting the rights and liabilities of the respective parties, and especially said to the jury that the plaintiff could not recover unless he, at the time of the injury, was in the exercise of due care. As an additional safeguard to the plaintiff in error, he granted a number of requests that were submitted by its counsel.

These requests were as follows:

First. "The right of a company to construct and operate its road along the streets carries with it the right to do whatever is necessary to the successful operation of the road, so that the company is not liable for injuries caused by horses becoming frightened, unless it can be shown that the fright was caused by some unusual sight or sound, and that this unusual sight or sound was caused by the company's negligence."

Second. "A man riding a horse along a street upon which a street car runs is presumed to be able to manage and control it, and the mere fact that the horse, when at such distance from the track as to avoid a collision, becomes frightened, places the company under no duty to him until it is evident that the rider has lost control of and cannot manage his horse."

Third. "The motorman of a car is not, as a matter of law, bound to check or stop his car merely because the horse becomes frightened at the appearance and noise of the cars; and the company would not be liable for its failure to check or stop it unless the circumstances were such as to show to the motorman that an accident would be unavoidable unless he did check or stop his car."

We think that, if there had been anything lacking in the original charge, it was supplied by these requests, and that in giving them the trial judge went to the extreme limit in laying down rules for the protection of the plaintiff in error. But it is insisted that he was in error in declining to give the fourth and seventh of the

special requests submitted to him. The fourth is in these words: "If you shall find that when this horse became frightened the motorman checked the speed of the car, and ran up making no more noise than usual or necessary, and that after the front of the car came up even with, or passed, the horse, which was at a safe distance from the track, it became unmanageable, and threw and hurt the rider, then the company would not be liable."

We think there was no error in declining to give this request. The effect of this request, if given, would have been to say to the jury that, though the horse was frightened, yet the traction company would be excused from liability if the motorman checked the speed of his car, and continued to run with only the usual and necessary noise, when under the law it was the part of due care and caution, when the horse became frightened, if necessary to calm and save the rider, to entirely stop the car, without regard to the point which the car had reached at the time. The seventh request, which was declined, is as follows: "If you shall find from the evidence that Don Mullins was riding a young and skittish horse, and that he met this car just at the end of the line, and his horse showed fright at the car, then I charge you it was his duty to turn off the street on which the car was running, and upon which it had to pass along upon its return to town, if there were cross-streets upon which he might have turned, and avoided the car on its return; and, if he failed to do so, then it was negligence."

Knoxville Traction Co. v. Mullins.

We think this request was properly declined. It ignores the fact that Mullins was a stranger in the town, and might have had no knowledge of any cross-street into which he might have turned for safety, as well as the fact that all fright exhibited by the horse upon first meeting the car might have been so small and immaterial as not to have suggested to a man of ordinary prudence that it would be unsafe for him to continue upon a street traveled by the cars. Whether it was prudent or imprudent for Mullins, riding a young and skittish horse, was a question which, under all the facts of the case, was to be settled by the jury under proper instructions, and the effect of this request would have been to take that question away from the jury, and determine it as a matter of law upon the two facts stated hypothetically in it.

We think there was no error committed in the trial of this cause, and the judgment of the lower court is affirmed.